# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

LYNN MARIE CHAMPION,

        **Plaintiff,**

-vs-                                      **Case No.  6:14-cv-1563-Orl-22DAB**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

# I.      BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on April 22, 2010, alleging an onset date of disability as May 24, 2006, due to diabetes, obesity, depression, and panic attacks. R. 97, 190-97, 253. Her application was denied initially and upon reconsideration. R. 97-110. Plaintiff

requested a hearing, which was held on November 14, 2012, before Administrative Law Judge John D. Thompson, Jr. (hereinafter referred to as "ALJ"). R. 30-96. In a decision dated February 7, 2013, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-29. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on September 3, 2014. R. 1-6. Plaintiff filed this action for judicial review on September 25, 2014. Doc. 1.

### B.        Medical History and Findings Summary

Plaintiff was born on June 19, 1966, and she was forty-six at the time of the ALJ's decision R. 21, 45. She graduated from high school with a special education diploma. R. 45. She has past relevant work as a deli cutter/slicer, daycare worker, and teacher aide II. R. 87. Plaintiff alleged disability due to depression, panic attacks, and diabetes. R. 211. She did not allege disability based on mental retardation in her application or at the hearing.

Plaintiff's medical history is set forth in detail in the ALJ's decision. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a history of gastritis, a history of obesity, a history of gastrointestinal reflux disease (GERD), a history of a hiatal hernia, a history of diverticulosis, a history of diabetes, a history of hyperlipidemia, a history of bilateral carpal tunnel syndrome with no surgical intervention or treatment, and a history of some anxiety and depression, mild to moderate in nature, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14-15.

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work with certain exertional and non-exertional restrictions. R.16. The ALJ determined that she could not perform her past relevant work. R. 21. Considering Plaintiff's

-2-

vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ determined that she could not perform her past relevant work.  R. 16-21.  However, the ALJ concluded that Plaintiff could perform other work existing in significant numbers in the national economy as an ink printer, counter clerk, storage rental clerk, mail clerk, and house sitter.  R. 22. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 22.

Plaintiff now asserts two points of error in the ALJ's determination.  First, Plaintiff argues that the ALJ erred by failing to fully and fairly develop the record because he should have ordered a consultative examination for testing of Plaintiff's IQ.  Second, she claims the ALJ erred in assessing her allegations of pain and limitations. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Development of the Record

Plaintiff claims that the ALJ erred by failing to fully and fairly develop the record when he failed to order a consultative examination for testing of Plaintiff's IQ. The ALJ has the basic

obligation to develop a full and fair record, even when, as here, a claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This includes the responsibility to develop a claimant's medical history for the 12 months preceding the month in which the application was filed. *See* 20 C.F.R. §404.1512(d). That said, the ALJ is not required to act as counsel to develop a claimant's case. *Foreman v. Astrue*, No. 8:09cv932-T-24AEP; 2010 WL 3292810, at *5 (M.D. Fla. Aug. 3, 2010) (citing *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). It is Plaintiff's burden to prove that she is disabled, and, consequently, she is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ determined that Plaintiff had the severe mental health impairments of "a history of some anxiety and depression, mild to moderate in nature." R. 14. In addition to a number of physical limitations[1] in her ability to perform a reduced range of light work, the ALJ made adjustments in Plaintiff's RFC for Plaintiff's mental limitations as follows:

> The claimant is able to add and subtract simple numbers and write a short note. She is limited to performing simple rote and repetitive tasks and can respond to oral directives in an environment involving little to no alteration of work tasks from one day to the next. The claimant can perform unskilled work requiring no more than occasional interaction with the general public, co-workers or supervisors and would do better working with things rather than people. She should not be required to meet any strict production goals or quotas.

R. 16.

Plaintiff argues the ALJ should have ordered a consultative examination specifically for IQ testing based– not on any prior assertion of mental retardation–but exclusively on comments in the January 19, 2011 consultative examination report by Felix Ortiz, Psy.D., who stated in his report:

> [Plaintiff] reported having a learning disability and a possible brain injury secondary to a high fever as a child. Further neurological and cognitive testing

---

[1]Plaintiff does not directly challenge the ALJ's finding of her severe physical impairments of a history of gastritis; history of obesity; history of GERD; history of a hiatal hernia; history of diverticulosis; history of diabetes; history of hyperlipidemia; history of bilateral carpal tunnel syndrome with no surgical intervention or treatment.

should be conducted in order to determine the client's functioning. The symptoms based on client report and clinical observations appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis for this client is guarded. In regards to the client's financial management, the client is not recommended to manage benefits and financial decisions.

R. 494.  Dr. Ortiz further opined regarding Plaintiff's Mental Status Evaluation:

The client was oriented to person, place, and time. Client's general thought processes were coherent, logical, and goal directed. Thought form and content during the mental status evaluation were unremarkable. Client's fund of knowledge appeared to be appropriate to the client's level of education. Insight appeared to be adequate based on the clinician's observations. Attention and concentration were at an age appropriate level. Speed of processing was adequate. Construction was adequate and the client's visual-motor coordination was determined to be adequate. Mental flexibility was adequate. Auditory and written receptive language was adequate. Auditory and written expressive language was adequate. Immediate memory was adequate. *Recent memory was severely impaired as evidenced by the client recalling 0 of 3 words without prompts. Mental computation was moderately impaired as evidenced by an inability to complete basic verbal arithmetic problems. Written computation was moderately impaired as evidenced by an inability to complete basic written arithmetic problems.* Reasoning appeared to tend towards concrete. Judgment related to self care and social problem-solving was adequate.

R. 494 (emphasis added).  Dr. Ortiz also did not diagnose Plaintiff with mental retardation, borderline intellectual functioning, or any other intellectual impairment.  R. 494.

At the consultative examination, Plaintiff reported to Dr. Ortiz that she had a high fever as a child that impacted her learning abilities, and she reported that she was unable to manage money effectively, pay bills, or complete the grocery shopping.  R. 492. Dr. Ortiz's diagnostic impression was major depressive disorder, generalized anxiety disorder, and panic disorder without agoraphobia. R. 494.   On January 19, 2011, Plaintiff contacted the Social Security Administration after her examination with Dr. Ortiz to explain that she was not able to tell Dr. Ortiz everything she wanted to at her appointment, *i.e.*, that she had "some learning disabilities" and she felt as though she was unable to learn new things.  R. 244.

-6-

Plaintiff also contends that the ALJ erred in not addressing the letter from her sister, dated August 12, 2011, who argued that Plaintiff was entitled to disability. Her statements mirror Plaintiff's testimony–that Plaintiff had high fevers for several days from the Roseola as an infant, which they believed caused "abnormal behavior"; and she was placed in special education classes at private schools after kindergarten. R. 290. Plaintiff also stated on her application that her "learning disabilities have been a constant for most of [her] lifetime [and] it has slowed everything down for [her]." R. 255.

At the hearing, the ALJ questioned Plaintiff at length about her mental capabilities, the mental demands of her work history, and any mental health treatment she had received. Plaintiff testified that she had been in special education classes as a child, had always lived with her parents, and she believed that she was unable to be a "functioning human being in society." R. 79, 87. She testified that she had never been able to handle her own finances, and when she was working, there were a lot of things, including simple tasks, that she did not understand and she had to pretend that she understood. R. 80.

Plaintiff argues that the ALJ should have ordered the intelligence testing to determine whether Plaintiff met Listing 12.05C for mental retardation because the SSA regulations provide that "[s]tandardized intelligence test results are essential to the adjudication of all cases of mental retardation that are not covered under the provisions of 12.05A." Doc. 18 at 12 (citing § 12.00D(6)(b), 20 CFR Pt. 404, Subpt. P., App. 1. and *Stutts v. Astrue*, 489 F.Supp.2d 1291, 1294 (N.D. Ala. June 13, 2007)).

The Commissioner asserts that Plaintiff had to prove her impairments satisfied all the criteria in both the introductory paragraph of Listing 12.05 *and* in subsection C of Listing 12.05; yet she did not. Doc. 19 at 9 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.05; *Sullivan v. Zebley*, 493

U.S. 521, 530 (1990); *Hickel v. Commissioner of Soc. Sec.*, 539 F. App'x 980, 983 (11th Cir. 2013)).

The Commissioner contends that Plaintiff failed to prove her impairments met or equaled the

diagnostic description in the introductory paragraph of Listing 12.05 because, regardless of the IQ

scores Plaintiff might be assessed with if tested, she failed to show she had "significantly sub-average

general intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period." *Id. (citing* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2013)).

> At the time of the ALJ's decision on February 7, 2013, Listing 12.05 stated[2] in relevant part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> * * *
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2013).  The introductory material to the mental disorders

listings clarified Listing 12.05, stating:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (2013). Thus, as the Eleventh Circuit has stated: "To be

considered for disability benefits under section 12.05, a claimant must at least (1) have significantly

---

[2] On August 1, 2013, the Social Security Administration (SSA) changed the terminology in Listing 12.05 from "mental retardation" to "intellectual disability." Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499-01 (Aug. 1, 2013). The change "will apply to only the name of listings 12.05 and 112.05." *Id.* at 46,500; *see Hickel*, 539 F. App'x at 982 n.2.

sub-average general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have "manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

The Commissioner argues the ALJ fully developed the record as required and he was not required to address a condition like retardation where the claimant has not alleged she was disabled due to the condition either when she filed her application or at her hearing. Doc. 19 at 6 (citing *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (holding ALJ had no duty to consider claimant's chronic fatigue syndrome (CFS) diagnosis where claimant was represented at the hearing before the ALJ and did not allege that she was disabled due to CFS either when she filed her claim or at her hearing) and *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (noting claimant did not raise mental health issues as a basis for disability, and "this failure alone could dispose of his claim, as it has been persuasively held that an 'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'")).  The Commissioner argues that, in this case, Plaintiff did not list mental retardation or an intellectual disability as a basis for her claim, and did not raise it at the hearing, even though she was represented by counsel. R. 30-96, 211.  Therefore, the Commissioner argues, because Plaintiff did not clearly state that mental retardation or intellectual disability was a basis for her alleged disability, the ALJ was not required to discuss evidence related to that impairment.

The Commissioner further argues that Plaintiff failed to show IQ scores were necessary for the ALJ to make an informed decision, and Plaintiff failed to show she was prejudiced regarding the development of the record at anything other than a speculative level.  The Commissioner contends that, although an ALJ "has a basic obligation to develop a full and fair record, . . . there must be a

showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record," and an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. " Doc. 19 at 9 (quoting *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) and citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). The Commissioner also argues that, because the Social Security Act requires only substantial evidence to support an ALJ's findings, the ALJ does not need to order a consultative examination to establish absolute certainty regarding a claimant's condition, especially since it is Plaintiff's burden to prove her impairments met or equaled a listed impairment. Doc. 19 at 9 (citing *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) and *Ellison*, 355 F.3d at 1276); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

As the Commissioner points out, although Dr. Ortiz noted that Plaintiff self-reported a learning disability and "a possible brain injury secondary to a high fever as a child," Dr. Ortiz specifically opined that he did *not* attribute Plaintiff's issues with recent memory and arithmetic to an intellectual impairment and he did not diagnose Plaintiff with mental retardation, borderline intellectual functioning, or any other intellectual impairment. R. 494. The Commissioner also points out that none of the other doctors diagnosed Plaintiff with mental retardation or any other intellectual impairment Doc. 19 at 10 (citing specific medical records).

The Commissioner argues that, given the lack of any prior diagnosis related to mental retardation or Listing 12.05, and the lack of any finding in Dr. Ortiz's examination which indicated Plaintiff's impairments satisfied the diagnostic description in the introductory paragraph of Listing 12.05, the ALJ had no reason to specifically consider Listing 12.05 or order another psychological

examination to further evaluate Plaintiff's intellectual functioning.[3]  The Commissioner also argues

that the assessments the state agency psychological consultants did not indicate Plaintiff's

impairments could have met or equaled Listing 12.05 (R. 500-13, 515).

   The Commissioner also argues that Plaintiff's activities, as discussed by the ALJ, show she

did not have the deficits in adaptive functioning necessary to satisfy the diagnostic description in the

introductory paragraph of Listing 12.05.  Doc. 19 at 12 (citing *Hickel,* 539 F. App'x at 984-85 (noting

claimant's ability to drive, prepare simple meals, dress and groom herself, attend church, and socialize

with friends as of evidence of no deficits in adaptive functioning); *Harris v. Commissioner of Soc.*

*Sec*., 330 F. App'x 813, 815 (11th Cir. 2009) (noting claimant's ability to dress and bathe himself,

take care of his personal needs, manage money, read, communicate effectively, and do simple math

provided substantial evidence claimant did not have deficits in adaptive functioning); *Garrett v.*

*Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007) (concluding claimant's ability to cook simple meals,

perform chores, build model cars, attend church, watch television, play cards, and walk in the mall

supported finding claimant did not have limitations in adaptive functioning)).  Plaintiff's work history

and activities contradict her argument that she had deficits in adaptive functioning.  Even if Plaintiff

had adequately raised mental retardation as an impairment for the ALJ to consider[4], since she cannot

meet the criteria in the introductory paragraph, she could not meet Listing 12.05.

---

   [3]A single therapist, Janine Kosek, L.C.S.W. noted in 2012 Plaintiff's report of having had a learning disability; however, she did not opine that Plaintiff had mental retardation, or borderline intellectual functioning. R. 666, 673.  As a LCSW, Ms. Kosek was not an acceptable medical source and was instead an "other" source. See 20 C.F.R. §§ 404.1502, 404.1513(a), (d), 416.902, 416.913(a), (d). Evidence from other sources cannot establish the existence of a medically determinable impairment, although an ALJ can use evidence from other sources to determine the severity of a claimant's impairments and how the claimant's impairments affects the claimant's ability to work. See 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); SSR 06-3p. The ALJ discounted the LCSW's opinion diagnosing a bipolar disorder as "clearly unsupported by the minimal findings in this record. There is no credible evidence to substantiate this diagnosis as the claimant has not had any manic episodes documented in the record. Furthermore, the observations made by many other examiners and medical providers do not support this diagnosis." R. 18.

   [4]The ALJ noted in the decision that "[n]either the claimant nor her attorney has suggested or alleged facts which establish the existence of any impairment, either singly or combined, which meets or medically equals the specific requirements for" a Listed impairment.  R. 15.

The ALJ queried Plaintiff at some length about the level of her activities and her functioning. Plaintiff admitted she had a valid driver's license and testified that she can drive. R. 46. She had received a high school diploma, although she was in special education classes. R. 493. Plaintiff testified she can read, write, and speak English, although, she testified, "not understanding it the way I needed to understand it." R. 45. She can sign her name, "add one plus one," and make simple change computations ($5 - $2 = $3). R. 46. Plaintiff takes care of her personal needs everyday. R. 77. She also prepared simple meals and performed routine household chores. R. 56-58, 60.

The ALJ thoroughly discussed Plaintiff's mental impairments and functioning:

[Plaintiff] reported no problems in caring for her personal needs and she does her own laundry (Ex. 4E/3-4). She testified she performs household chores including doing the dishes, mopping floors and cleaning the bathroom. In social functioning, the claimant has mild difficulties. The claimant lives with her elderly father and testified that she talks to a friend on the phone, shops at the Dollar Store and goes to the gym three times a week. She reported that she maintains relationships with family members and visits at her sister's house (Ex. 4E/6). The claimant's social and adaptive capacities are generally retained (Ex. 12F/3). With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant testified that she spends time watching television, drives and prepares simple meals for herself. The claimant answers questions appropriately and follows directions without difficulty (Ex. 9F/3). She can make simple work related decisions and sustain work activity without special supervision (Ex. 12F/3).
* * *
At the hearing, the claimant testified that she completed high school and was enrolled in special education classes since about the fourth grade. She can write a short note and perform simple mathematical calculations. She holds a valid unrestricted Florida driver's license and drives from time to time. The claimant stated that she lives with her father and this has always been the case. They reside in a trailer.

R. 15-16.

The Record also does not support deficits in adaptive functioning. Plaintiff worked in a Publix deli for two years in 2003 and 2004, waiting on customers and slicing the meats and cheeses, and operating the weighing machine, including putting in the price of the meat or cheese, for the machine to calculate the total price. R. 47. Plaintiff also reported to Dr. Ortiz that she had worked at

Albertson's grocery store for 11 years, from 1985 to 1994.  R. 493.  Plaintiff worked for a year at a daycare part-time (20-25 hours per week) and from 1998 to 2000 for the Volusia County School Board as a teacher's helper and lunchroom monitor; she could grade papers as long as the correct answers were already identified on an answer sheet.  R. 48-49.  The ALJ's decision was based on substantial evidence in the Record.

### B.    Pain and Credibility

Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's allegations of pain and limitations.  The Commissioner argues that the ALJ properly evaluated Plaintiff's credibility.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons

must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated

credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1561-62;

*Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, the ALJ determined that Plaintiff's "medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible

for the reasons explained in this decision." R. 19.  The ALJ cited three reasons for finding Plaintiff

not credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In assessing the claimant's credibility, it is noted that she repeatedly fails to follow medical recommendations to lose weight and follow a diabetic diet. She testified that she did lose 30 pounds and is slowly gaining it back. She has been taught to eat healthy and within her diabetic limitations though the claimant refuses and eats frozen dinners which she admitted is not part of her recommended diabetic diet. Such non-compliance indicates that the claimant's complaints and limitations may not actually be as severe as alleged.
>
> The claimant has sought little treatment for her alleged mental health symptoms and has never been psychiatrically hospitalized. She was advised by her doctor to seek therapy though did not do so until February of 2012 and then only went twice to see a therapist. The claimant has not worked in several years, which raises questions as to whether her continuing unemployment is actually due to medical impairments.
>
> The claimant's daily activities are not limited to the extent expected for someone who is totally disabled. The claimant has a valid driver's license and testified that she can drive. She lives with her widowed elderly father and is independent in caring for her personal needs. The claimant additionally cooks and performs routine household chores.

R. 19.

Plaintiff argues that the ALJ's reason is not based on the correct legal standards because the

ALJ failed to consider that Plaintiff could not afford to buy the necessary foods that would comply

with her recommended diet and "she is forced to eat frozen dinners."  Plaintiff testified that she "did

lose 30 pounds," in compliance with her doctor's orders, by walking on a treadmill for fifteen minutes

at a time to try to lose weight, and tried following a diabetic diet to the best of her ability, but she did

not cook food, but usually ate boxed or microwave food; she had applied for food stamps, but had

been rejected. R. 57, 69. Plaintiff actually testified that "her father (with whom she lived) does that,"

*i.e.*, takes care of the food stamps. R. 57.  The Commissioner points to Plaintiff's testimony that the

reason she did not comply with her diet was that "I don't cook and I don't know what to make";

arguing that she made no mention that she could not afford to comply with her diet (R. 56).

Based on a thorough review of the Record, the Court finds that the ALJ's credibility

determination was based on substantial evidence.  Plaintiff did not argue that she could not afford

food, as she does now on appeal.  Rather, at the hearing, she testified in response to the ALJ's

question: "So, who does the cooking where you live?" and Plaintiff responded:

A. Neither.  He [her father] makes what he wants and I make what I, what I, what I eat.
Q. But you said you don't do any cooking.
A Well, I put it in the microwave.
Q What? What do you put in the microwave?
A Frozen dinners normally.
Q Is that on the list of things you should be eating as a diabetic?
A No. Probably not.
Q So, you're not following your diabetic diet?
A No.

R. 57-58.  She admitted she did not follow a diabetic diet, although she knew she was supposed to

be complying with the doctor's instructions regarding her diabetic condition.  R. 56.  She had

taken the classes on diabetic training and counseling, but she does not cook.  R. 57.

Plaintiff also challenges the ALJ's credibility finding, arguing that he erred in failing to

consider the fact that she has lost her insurance, when he noted that she had no mental hospitalizations

and had sought little mental health treatment – not until February 2012 and only twice. R. 72. She

points to her testimony that Dr. Ferguson referred her to a mental health counselor at Bert Fish Medical Center and she did indeed follow-up with the therapist, but she was only able to see her twice due to the fact that she moved. R. 72.  Plaintiff argues that she utilized community resources to the best of her ability, which supports her credibility.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1998) (holding that when a claimant cannot afford the prescribed treatment and can find no way to obtain it, she is excused from noncompliance). Plaintiff argues that she stopped working in 2004 but did not file for benefits until April 2010, even though she alleged that she has been unable to work since May 2006 due to her medical impairments. R. 192, 199.

The Commissioner argues the ALJ properly considered Plaintiff's sparse treatment and lack of  hospitalization for her alleged mental health symptoms (Tr. 19).   The Commissioner points to Plaintiff's testimony in response to the ALJ's questions, that she had not sought out or applied for assistance in obtaining free or low cost mental health care (R. 83), and argues the ALJ is entitled to consider a claimant's limited and sporadic treatment as an indication that her condition was not as limiting as she alleged. Doc. 19 at 14 (citing 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v); SSR 96-7p).

The ALJ determination on this issue was also based on substantial evidence.  By her own admission, Plaintiff had health insurance coverage for a portion of the period at issue and did not follow up the recommendation to see a therapist until 2010, and then only twice. R.  72.

As to her third contention, Plaintiff argues that the ALJ's finding that her activities of daily living–such as  driving with valid driver's license, living with her widowed elderly father, cooking, doing chores, and independently caring for her personal needs– is not based on substantial activity. Plaintiff argues that her activities were not inconsistent with her claim of disability because she testified that she would drive to pick up things that she needed from Dollar General, but it would take

her ten minutes to get out of the car (R. 61) and daily activities were very limited.  Doc. 18 at 15

(citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities

of short duration, such as housework or fishing, disqualifies a claimant from disability")).

The Commissioner argues the ALJ determination regarding Plaintiff's daily activities – which

included caring for her personal needs, preparing simple meals, doing household chores, driving, and

shopping (R. 46, 56-58, 60, 61, 77)–was based on substantial evidence.  The Commissioner contends

that daily activities are just one factor the ALJ considers when assessing a Plaintiff's credibility, and

the ALJ properly applied the case law and regulations on evaluating subjective complaints.

In this case, the ALJ's decision is supported by substantial evidence.  The ALJ offered specific

reasons for discrediting Plaintiff's subjective complaints, including Plaintiff's noncompliance with

medical recommendations regarding following a diabetic diet and losing weight, lack of mental health

treatment, sporadic work history (Plaintiff stopped working in 2004, two years before her alleged

onset date in 2006 (R. 192, 199)), and her daily activities.   These are factors the ALJ is directed to

consider.  20 C.F.R. §§ 404.1529; 416.929.

## IV.    RECOMMENDATION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of

law and is supported by substantial evidence.  Therefore, it is respectfully recommended that the

administrative decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  If this

Recommendation is adopted, the Clerk should be directed to enter judgment accordingly,

terminate all pending matters, and close the file.

Failure to file written objections to the proposed finding and recommendations contained in

this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an

aggravated party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

Recommended in Orlando, Florida on November 6, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record